**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBERT FORD, et al.,<br><br>              Plaintiffs,<br><br>v.<br><br>TAKEDA PHARMACEUTICALS<br>U.S.A., INC. et al.,<br><br>              Defendants. | Civil Action No. 1:21-cv-10090-WGY<br><br>**LEAVE TO FILE GRANTED ON**<br>**JUNE 15, 2021** |

**REPLY IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE A
        FIDUCIARY BREACH.......................................................................................... 2

        A.      The Court Should Reject Plaintiffs' Attempt To Evade Their Pleading
                Obligation ........................................................................................... 2

        B.      Plaintiffs' Cited Authority Confirms That Claims Based Only On
                Allegations Of Poor Performance Or The Failure To Offer Lower-Cost
                Share Classes Cannot Withstand Dismissal........................................ 5

        C.      Plaintiffs' Performance-Based Challenge To The Focus Funds Fails ................... 9

                1.      The Opposition Confirms That Plaintiffs' Claim Is Based On
                        Hindsight......................................................................... 9

                2.      Plaintiffs Cannot Skirt The Meaningful Benchmark Requirement.......... 10

                3.      Plaintiffs' Additional Allegations About The Focus Funds Fail To
                        Plausibly Suggest Imprudence ................................... 13

        D.      Plaintiffs' Share Class Allegations Do Not State A Claim.................... 14

        E.      Count III Cannot Stand ...................................................... 15

III.    CONCLUSION..................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Intel Corp.*,
2021 WL 229235 (N.D. Cal. Jan. 21, 2021) ...................................................................1, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................3, 14

*Barchock v. CVS Health Corp.*,
2017 WL 1382517 (D.R.I. Apr. 18, 2017)...............................................................................4

*Birse v. CenturyLink, Inc.*,
2019 WL 1292861 (D. Colo. Mar. 20, 2019) ..........................................................................6

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ...............................................................................................8, 9

*Brotherston v. Putnam Invs., LLC*,
907 F.3d 17 (1st Cir. 2018)...............................................................................................11, 12

*Brown-Davis v. Walgreen Co.*,
2020 WL 8921399 (N.D. Ill. Mar. 16, 2020)........................................................................11

*Cervantes v. Invesco Holding Co.*,
2019 WL 5067202 (N.D. Ga. Sept. 25, 2019) ........................................................................6

*Chao v. Ballista*,
630 F. Supp. 2d 170 (D. Mass. 2009) .....................................................................................3

*Davis v. Salesforce.com, Inc.*,
2020 WL 5893405 (N.D. Cal. Oct. 5, 2020).........................................................................14

*Davis v. Salesforce.com, Inc.*,
2021 WL 1428259 (N.D. Cal. Apr. 15, 2021) ........................................................................1

*Divane v. Nw. Univ.*,
953 F.3d 980 (7th Cir. 2020) ...................................................................................11, 14, 15

*Dorman v. Charles Schwab Corp.*,
2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ............................................................................5

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)....................................................................3, 6

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)...........................................................................................3

*Fisher v. JP Morgan Chase & Co.*,
    703 F. Supp. 2d 374 (S.D.N.Y. 2010)................................................................15

*Fudge v. Penthouse Int'l, Ltd.*,
    840 F.2d 1012 (1st Cir. 1988)..............................................................................5

*Hay v. Gucci Am., Inc.*,
    2018 WL 4815558 (D.N.J. Oct. 3, 2018).............................................................6

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) .......................................................................6, 14

*Kenney v. State St. Corp.*,
    694 F. Supp. 2d 67 (D. Mass. 2010) ...................................................................4

*Kurtz v. Vail Corp.*,
    2021 WL 50878 (D. Colo. Jan. 6, 2021)........................................................4, 5, 8

*L–7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011).................................................................................3

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
    2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012).........................................................6

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
    2012 WL 701397 (S.D.N.Y. Mar. 6, 2012) ..........................................................8

*Larson v. Allina Health Sys.*,
    350 F. Supp. 3d 780 (D. Minn. 2018).................................................................11

*Leber v. Citigroup 401(K) Plan Inv. Comm.*,
    129 F. Supp. 3d 4 (S.D.N.Y. 2015) ......................................................................9

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) .............................................................................14

*Martin v. CareerBuilder, LLC*,
    2020 WL 3578022 (N.D. Ill. July 1, 2020)....................................................3, 4, 8

*Meiners v. Wells Fargo & Co.*,
    2017 WL 2303968 (D. Minn. May 25, 2017)......................................................10

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ..................................................................... *passim*

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ...................................................................2, 4, 5, 9

*PBGC v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ....................................................................................................3, 4

*Pledger v. Reliance Tr. Co.*,
    240 F. Supp. 3d 1314 (N.D. Ga. 2017) ........................................................................................8

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
    2016 WL 7494320 (D. Conn. Dec. 30, 2016) ..........................................................................15

*Sacerdote v. N.Y. Univ.*,
    328 F. Supp. 3d 273 (S.D.N.Y. 2018) ......................................................................................12

*Sweda v. University of Pennsylvania*,
    923 F.3d 320 (3d Cir. 2019) ....................................................................................................8, 9

*Tracey v. Massachusetts Institute of Technology*,
    2017 WL 4478239 (D. Mass. Oct. 4, 2017) ..............................................................................7

*Turner v. Schneider Electric Holdings, Inc.*,
    2021 WL 1178308 (D. Mass. Mar. 26, 2021) ........................................................................6, 7

*United States v. Ramirez*,
    471 F. Supp. 3d 354 (D. Mass. 2020) .....................................................................................15

*United States v. Scott*,
    2014 WL 5816948 (D. Mass. Nov. 10, 2014) ........................................................................15

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993) ..........................................................................................................4

*Wehner v. Genentech, Inc.*,
    2021 WL 2417098 (N.D. Cal. June 14, 2021) .............................................................. *passim*

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017) ..........................................................................6

*White v. Chevron Corp.*,
    752 F. App'x 453 (9th Cir. 2018) .........................................................................................1, 14

*Yak v. Bank Brussels Lambert, BBL*,
    252 F.3d 127 (2d Cir. 2001) ......................................................................................................5

**Other Authorities**

29 C.F.R. § 2550.404a-5 ...................................................................................................................12

75 Fed. Reg. 64,910, 64,916-64,917 (Oct. 20, 2010) ..................................................................12

Fed. R. Civ. P. 12 ...................................................................................................................2, 10

## I.    INTRODUCTION

Plaintiffs' Opposition restates the Amended Complaint's flawed legal conclusions, disregards documents properly before the Court, and turns the pleading standard on its head.  But none of those tactics changes the fact that, at bottom, Plaintiffs allege only that the Northern Trust Focus Funds ("Focus Funds") were not the best performing target-date funds in the market and the Takeda Pharmaceuticals U.S.A., Inc. Savings and Retirement Plan ("Plan") did not offer the lowest-cost share class of seven investment options for short periods of time.  Allegations that a fiduciary "could have chosen different vehicles for investment that performed better during the relevant period, or sought lower fees for administration of the fund," do not plausibly allege a fiduciary breach.  *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018); *accord Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (acknowledging that ERISA does not require a plan fiduciary to pick the best performing fund).  These principles mandate dismissal of Plaintiffs' Amended Complaint.

Contrary to Plaintiffs' contention, evaluating their performance challenge to the Focus Funds does not require the Court to "resolve disputed facts."  ECF No. 32, Pls.' Mem. in Opp'n to Mot. to Dismiss ("Opp.") at 17.  Plaintiffs claim that the Focus Funds were imprudent because they underperformed certain allegedly comparable TIAA, T. Rowe Price and Vanguard target-date options.  By making these assertions, Plaintiffs put the investments' characteristics squarely at issue.  The judicially-noticeable documents Defendants submitted to the Court—which contain the type of data that the Amended Complaint should address—show that Plaintiffs' preferred alternatives are not "meaningful benchmarks" for the Focus Funds.  Numerous courts reject claims challenging target-date funds based on such apples-to-oranges comparisons.  *E.g.*, *Meiners*, 898 F.3d at 823; *Anderson v. Intel Corp.*, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021); *Wehner v. Genentech, Inc.*, 2021 WL 2417098, at *8 (N.D. Cal. June 14, 2021); *Davis v.*

*Salesforce.com, Inc.*, 2021 WL 1428259, at *7 (N.D. Cal. Apr. 15, 2021); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *18 (S.D.N.Y. Oct. 7, 2019).

Plaintiffs argue that, beyond performance comparisons, they assert other allegations that the Focus Funds were imprudent, including that the funds were "untested" and had a short performance history. Far from being "red flags," such allegations are insufficient to plausibly plead imprudence. *Patterson*, 2019 WL 4934834, at *14; *Wehner*, 2021 WL 2417098, at *8. Indeed, Plaintiffs do not dispute that some of their preferred target-date funds also suffer from these very same "indications of imprudence," including so-called excessive turnover.

Count II, Plaintiffs' share class claim, is likewise foreclosed by judicially-noticeable disclosures provided to all Plan participants, including Plaintiffs. The disclosures reflect the Plan's low investment management fees and, further, show that the fees decreased and the share classes changed over time. These circumstances cannot support a plausible breach of fiduciary duty claim for failure to investigate and offer lower-cost shares.

Finally, Plaintiffs' Opposition confirms that their derivative failure-to-monitor claim is based solely on conclusory allegations that Plaintiffs cannot cure. For these reasons and those in Defendants' opening brief, the Court should dismiss the Amended Complaint.

## II.   THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE A FIDUCIARY BREACH

### A.   The Court Should Reject Plaintiffs' Attempt To Evade Their Pleading Obligation

Trying to shift the focus from the Amended Complaint's deficiencies, Plaintiffs accuse Defendants of attempting to litigate factual issues too soon. Opp. at 10. But Plaintiffs cannot avoid dismissal by dodging the burden of pleading cognizable factual allegations that plausibly infer misconduct. Indeed, Plaintiffs' view of the pleading standard would render Rule 12 toothless, in contrast to the Supreme Court's instruction that courts should carefully consider

whether a complaint states a claim for fiduciary breach in the ERISA class action context.  *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Plaintiffs argue that the Amended Complaint must "be read as a whole," not parsed carefully to determine whether "each allegation, in isolation" is plausible.  Opp. at 17.  What they really seek is blind acceptance of their threadbare allegations with no assessment of whether those allegations – taken individually or as a whole – allow a plausible inference of imprudence. Plaintiffs should not be able to "unlock the doors of discovery" and force Defendants into expensive litigation by merely layering demonstrably unsupported conclusory allegations on top of one another.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Rather, viewing the Amended Complaint as a whole must account for the "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011); *see also Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009) ("This analysis depends on the full factual picture, the particular cause of action, and the available alternative explanations," and dismissal is warranted when the "alternative explanations [are] so overwhelming, that the claims no longer appear plausible.").  This is particularly important here given the extraordinary discovery costs and burdens associated with this type of ERISA litigation.  *See Dudenhoeffer*, 573 U.S. at 425; *PBGC v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) ("*Morgan Stanley*").

Indeed, other courts have "holistically" examined complaints lodging similar claims and still found the allegations wanting.  *See Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *4 n.5 (N.D. Ill. July 1, 2020); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at

3

*12 (S.D.N.Y. Sept. 18, 2019); *see also Meiners*, 898 F.3d at 824.  These decisions show that if

none of Plaintiffs' allegations individually suggest a flawed process, then those same deficient

allegations *in toto* do not either.

Plaintiffs further argue that they lack sufficient information regarding Defendants'

conduct, which they believe should excuse the Amended Complaint's deficiencies.  Opp. at 9-10.

In such circumstances, the inquiry turns on whether Plaintiffs plead circumstantial facts allowing

the Court to <u>plausibly</u> <u>infer</u> imprudence.  *See Morgan Stanley*, 712 F.3d at 718-19; *Kurtz v. Vail*

*Corp.*, 2021 WL 50878, at *7 (D. Colo. Jan. 6, 2021).  Plaintiffs have ready access to a wealth of

information about the Plan's investments and fees, both publicly and through Plan disclosures,

sufficient to craft a plausible complaint.  *See Meiners*, 898 F.3d at 824; *Morgan Stanley*, 712

F.3d at 719-20; *Martin*, 2020 WL 3578022, at *5.

Tellingly, far from using that information, Plaintiffs run away from it.  They complain

that Defendants submitted plan-and-investment related information as exhibits to their motion.

Opp. at 16-17.  Yet courts routinely consider this information when evaluating allegations like

Plaintiffs' at the motion to dismiss stage.  *E.g.*, *Meiners*, 898 F.3d at 823 (concluding that the

district court properly considered target-date investment "prospectuses not attached to the

Complaint"); *Wehner*, 2021 WL 2417098, at *3 (taking judicial notice of fund fact sheets, fund

prospectuses, and investment disclosures); *Patterson,* 2019 WL 4934834, at *11 (annual

disclosures); *Barchock v. CVS Health Corp.*, 2017 WL 1382517, at *1 (D.R.I. Apr. 18, 2017),

*aff'd*, 886 F.3d 43 (1st Cir. 2018) (Form 5500s).  It is well-settled in this Circuit that a court may

consider documents central to a plaintiff's claims.  *E.g.*, *Watterson v. Page*, 987 F.2d 1, 3 (1st

Cir. 1993); *Kenney v. State St. Corp.*, 694 F. Supp. 2d 67, 70 (D. Mass. 2010) (taking judicial

notice of "documents on which the Amended Complaint depends").  Otherwise, a plaintiff could

4

avoid dismissal by ignoring contrary, indisputable facts - precisely what Plaintiffs seek to do here.

Notably, Plaintiffs do not contest the authenticity of Defendants' exhibits or the reliability of the information in the exhibits. *See* Opp. at 16-17. Nor do Plaintiffs deny that information about the Focus Funds, the Plan's fees or their preferred investment options was available to them when drafting the Amended Complaint. They cannot run from this information now by arguing it falls outside the pleadings. *See Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) ("[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading."); *Yak v. Bank Brussels Lambert, BBL*, 252 F.3d 127, 131 (2d Cir. 2001) ("Carefully avoiding all mention of the [documents] does not make them any less integral to [plaintiff's] complaint.").

### B. Plaintiffs' Cited Authority Confirms That Claims Based Only On Allegations Of Poor Performance Or The Failure To Offer Lower-Cost Share Classes Cannot Withstand Dismissal

Plaintiffs point to allegations that the Focus Funds "consistently underperformed" compared to their cherry-picked alternatives, and that Defendants offered "higher-cost" share classes of certain Plan investment options. Opp. at 13, 15. But the Amended Complaint must allege more than that to withstand the motion to dismiss. That is because a claim premised only on investment underperformance—"consistent" or otherwise—does not suffice to plead a plausible claim for fiduciary misconduct. *See Meiners*, 898 F.3d at 822.[1] Likewise, there is no

---

[1] *See also Anderson*, 2021 WL 229235, at *7 ("allegations of poor performance, standing alone, are insufficient to state a claim for breach of the duty of prudence . . . because the Court's obligation under ERISA is not to evaluate whether a defendant's investment turned out to be wise in hindsight[.]"); *Kurtz,* 2021 WL 50878, at *7("It is not sufficient to simply allege that an investment did poorly, and, therefore, a plaintiff was harmed—relative underperformance is insufficient to state a claim."); *Patterson*, 2019 WL 4934834, at *13 ("Plaintiffs' conclusory allegations of cumulative underperformance are insufficient to state a claim, since backward-looking contentions regarding overall underperformance are improperly grounded in hindsight."); *Dorman v. Charles Schwab Corp.*,  2019 WL 580785, at *6 (N.D. Cal. Feb. 8,

plausible inference of imprudence based merely on the offering of more expensive shares.  *E.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("nothing in ERISA requires every fiduciary to . . . offer the cheapest possible fund[.]").[2]

Plaintiffs' cited authority, Opp. at 10-13, only highlights the Amended Complaint's shortcomings.  In all of them, fiduciary breach claims survived because the plaintiffs alleged much more than the cost or performance of plan investment options.  For example, in *Turner v. Schneider Electric Holdings, Inc.*, 2021 WL 1178308 (D. Mass. Mar. 26, 2021), in addition to contentions of underperformance, the plaintiffs made critical allegations of disloyalty and conflicts of interest.  *Id*. at *4 (refusing to dismiss imprudent investment claim because of allegations of self-dealing and conflicts of interest, including that the challenged proprietary funds were chosen to benefit the defendant service provider).  Without such allegations – which are absent here - the *Turner* court would have likely reached a different result because it acknowledged that "performance comparisons between funds that differ in investment strategy and asset allocation are particularly unavailing" and "plaintiffs cannot support their claim of

---

2019) (dismissing claim alleging imprudent selection and retention of target-date funds due to "'material' and 'persistent underperformance'"); *Cervantes v. Invesco Holding Co*., 2019 WL 5067202, at *5 (N.D. Ga. Sept. 25, 2019) ("choosing poorly performing funds . . . is insufficient to state a claim"); *Ferguson*, 2019 WL 4466714, at *9 ("Plaintiffs' allegations that certain investment options underperformed as compared to certain benchmarks do not raise a plausible inference that a prudent fiduciary would have found those investments to be 'so plainly risky' to render them imprudent."); *Birse v. CenturyLink, Inc*., 2019 WL 1292861, at *5 (D. Colo. Mar. 20, 2019) ("relative underperformance is insufficient to state a breach of fiduciary duty claim"); *Hay v. Gucci Am., Inc*., 2018 WL 4815558, at *8 (D.N.J. Oct. 3, 2018) ("The Court agrees with Defendants that '[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation – either when the investment was selected or as its underperformance emerged – as ERISA requires a plaintiff to plead some other objective indicia of imprudence.'"); *White v. Chevron Corp*.,  2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017) ("Poor performance, standing alone, is not sufficient to create a reasonable inference that [defendants] failed to conduct an adequate investigation—either when the investment was selected or as its underperformance emerged[.]"); *Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 2012 WL 3191961, at *2 (S.D.N.Y. Aug. 7, 2012), *aff'd*, 513 F. App'x 78 (2d Cir. 2013) (dismissing claim alleging "eight comparable funds outperformed the Default Fund over the five-year period" because "the ultimate outcome of an investment is not proof of imprudence or breach of fiduciary duties.").
[2] *See also* Defs.' Mem. at 18 (citing cases).

imprudence by retroactively comparing the performance of the [challenged] Aon Trusts to other funds." *Id*. at *3.

In *Ahmed v. Liberty Mutual Group, Inc.*, the court concluded that the plaintiffs plausibly stated a claim for retaining the challenged investment options because the complaint "alleged a history of consistent underperformance <u>as well as plausible allegations of conflicts of interest</u>." No. 20-30056-MGM, (D. Mass. June 15, 2021), ECF No. 44 (emphasis added) (noting that the plaintiffs alleged that the challenged funds were offered "to advance Defendants' business interests" and "protect lucrative business relationships" with the fund providers, and further alleged breaches of the duty of loyalty); *see also Ahmed v. Liberty Mutual Group, Inc.*, Pls.' Opp. to Mot. to Dismiss at 20, No. 20-30056-MGM (D. Mass. July 8, 2020), ECF No. 28 (conceding it is Liberty Mutual's business relationships "coupled with" the alleged imprudence of certain plan investment options that "show Defendants failed to act 'solely in the interest' of Plan participants.").

Similarly, in *Tracey v. Massachusetts Institute of Technology*, 2017 WL 4478239 (D. Mass. Oct. 4, 2017), all of the claims were premised on "MIT's allegedly improper relationship with" Fidelity, "the recordkeeper and primary investment provider of the Plan." *Id*. at *1 (noting allegations of imprudence and disloyalty, including that "the Plan was an illicit kickback scheme whereby Fidelity received inflated fees at the expense of the Plan's participants in exchange for making donations to the MIT endowment.").[3]

These cases all involved allegations of conflicts of interest and/or self-dealing or other conduct taken to benefit the defendants at the expense of plan participants, whereas Plaintiffs

---

[3] The *Ahmed*, *Turner* and *Tracey* plaintiffs are represented by the same counsel as Plaintiffs here.

here allege nothing of the sort.[4]  That is a material difference and justifies a different outcome.
*See, e.g., Martin*, 2020 WL 3578022, at \*4 & n.4 (explaining that proprietary fund and self-
dealing allegations make those cases materially different from claims alleging imprudence
without such allegations); *Kurtz*, 2021 WL 50878, at \*8 (dismissing claim where "plaintiff puts
forth no allegations of self-interested dealing, kickbacks, or inappropriate influence, from which
the Court could more readily derive an inference of fiduciary breach."); *Meiners*, 898 F.3d at 824
(affirming requirement that a plaintiff "pair allegations of self-interest with allegations of an
imprudently chosen fund in order to survive a motion to dismiss"); *Pledger v. Reliance Tr. Co*.,
240 F. Supp. 3d 1314, 1333 (N.D. Ga. 2017) (dismissing claim where the plaintiffs failed to
"allege any self-dealing or *quid pro quo* arrangement that resulted in the selection of the
questionable funds"); *Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 2012 WL 701397, at \*2
(S.D.N.Y. Mar. 6, 2012) ("Decisions in which courts have allowed allegations of imprudence to
go forward rested on allegations that the defendants selected certain funds out of self-interest or
demonstrated clear incompetence.").

Plaintiffs' reliance on *Sweda v. University of Pennsylvania*, 923 F.3d 320 (3d Cir. 2019),
*cert. denied*, 140 S. Ct. 2565 (2020), and *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir.
2009), fares no better.  Opp. at 11-12.  In both the plaintiffs asserted claims for breach of the
duty of loyalty and prohibited transactions and alleged numerous detailed facts beyond mere
investment performance and price.  *See Sweda*, 923 F.3d at 330-31 (alleging, among other
things, that the defendants "entered a 'lock-in' agreement" with the plan's recordkeeper and
investment provider "that mandated inclusion" of two allegedly underperforming funds, paid

---

[4] The string-cited decisions in the Opposition are distinguishable for the same reason—they involved additional allegations of imprudent conduct such as charging excessive plan administrative fees, inappropriate relationships with a plan service provider, and/or disloyal actions, including the defendant offering its own proprietary investment options to enrich itself or seed its own funds.  *See* Opp. at 11 n.3.

excessive plan administrative fees, offered certain funds with "layers of unnecessary fees," offered too many investment options thereby "confusing participants"); *Braden*, 588 F.3d at 590, 596 (alleging that revenue sharing payments "were kickbacks" paid by the mutual fund companies as "a quid pro quo" for inclusion of their funds in the plan).[5]  The Amended Complaint is devoid of these type of claims and allegations, *see generally* ECF No. 22, rendering *Sweda* and *Braden* inapposite.

      **C.**      **Plaintiffs' Performance-Based Challenge To The Focus Funds Fails**

            **1.**      **The Opposition Confirms That Plaintiffs' Claim Is Based On Hindsight**

In the Opposition, Plaintiffs do not contest that hindsight allegations of underperformance cannot support an inference of imprudent conduct.  *See* Defs.' Mem. at 16-17.  Instead, they argue that their underperformance allegations are <u>not</u> based on hindsight because the Focus Funds allegedly underperformed "by the start of the class period in 2015" and therefore continued underperformance was "foreseeable."  Opp. at 18.  But this argument is equally hindsight-based because "past performance is no guarantee of future" performance.  *Patterson*, 2019 WL 4934834, at *11.  Thus, courts reject claims based on underperformance even where, like here, a plaintiff alleges that the investment had "a history of poor performance at the inception of the Class Period."  *Leber v. Citigroup 401(K) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 13 (S.D.N.Y. 2015).  This Court should follow suit.

---

[5] Plaintiffs' reliance on *Braden* is misplaced for additional reasons.  In *Braden*, the plaintiffs alleged that the challenged funds "underperformed the market indices they were designed to track."  *Id*. at 596.  But Plaintiffs do not allege that here, ignoring the Focus Funds' custom benchmark and merely pointing to three other target-date fund families and one index as proof of poor performance.  *See* ECF No. 27, Defs.' Mot. to Dismiss Pls.' Am. Compl. ("Defs.' Mem."), at 13-14.  Moreover, *Braden* was issued long before the Eighth Circuit subsequently affirmed the "meaningful benchmark" pleading requirement and dismissal of an imprudence claim based solely on inapt performance and fee comparisons in *Meiners*.

## 2.      Plaintiffs Cannot Skirt The Meaningful Benchmark Requirement

Plaintiffs' underperformance claim rests on comparing the performance of the Focus Funds to that of three other target-date funds and an S&P index, but as Defendants explained in their moving brief, these are improper and inadequate comparisons.  *See* Defs.' Mem. at 7-13. Plaintiffs respond by arguing that the "meaningful benchmark" analysis raises "factual disputes" inappropriate at this juncture.  Opp. at 18-19.  They are wrong.

First, Defendants are not asking the Court to resolve any factual issue, but rather to take notice of publicly-available information that Plaintiffs conspicuously ignore.  *E.g.*, *Meiners v. Wells Fargo & Co.*, 2017 WL 2303968, at *2 (D. Minn. May 25, 2017) (considering fund prospectuses "because Meiners's complaint references returns data").  Otherwise, Plaintiffs are absolved "from pleading benchmarks for the funds and from pleading internal processes about selecting funds."  *Meiners*, 898 F.3d at 824.[6]

Second, the "meaningful benchmark" standard applies at the Rule 12 stage, and numerous courts have dismissed performance claims where, like here, the plaintiffs failed to plead adequate facts that their preferred alternatives are appropriate benchmarks for the Focus Funds.  *E.g., Wehner*, 2021 WL 2417098, at *8 (dismissing claim where the plaintiff "fail[ed] to explain why his identified comparators—the S&P Indices and six retail TDFs—serve as 'meaningful benchmarks'" and finding insufficient assertions the funds "all share the same overall purpose and strategy"); *see also* Defs.' Mem. at 8-9 (citing cases).[7]  Yet nowhere in the

---

[6] The plaintiff in *Meiners* suggested that the court ignore the "extrinsic evidence" of the funds' differing asset allocations because it involved fact questions that could not be resolved at the pleadings stage. *Meiners v. Wells Fargo & Co.*, No. 16-cv-03981 (D. Minn. Apr. 12, 2017), ECF No. 46.  The court correctly rejected that argument, and this Court should too.

[7] Plaintiffs assert that determining whether a fund constitutes a meaningful benchmark requires "factual findings" and cite *Meiners*.  Opp. at 18.  *Meiners* did not so hold, but rather affirmed dismissal at the Rule 12 stage because the plaintiff failed to sufficiently plead a meaningful comparator for the challenged

Amended Complaint are any factual allegations plausibly showing that the TIAA, T. Rowe Price or Vanguard funds are meaningful comparators for the Focus Funds. *See* Defs.' Mem. at 7-12. The "missing factual allegations are facts about the funds themselves," which dooms Plaintiffs' claim. *Meiners*, 898 F.3d at 822; *see also Larson v. Allina Health Sys.*, 350 F. Supp. 3d 780, 799 (D. Minn. 2018) (noting underperformance allegations "cannot stand because Plaintiffs have only pled a market alternative that is similar, but not identical to" the Fidelity funds in the plan).[8]

In a last-ditch effort to shirk the "meaningful benchmark" requirement, Plaintiffs argue that it imposes an impossible pleading standard. Opp. at 20. Not so. The issue is not that target-date funds can never be compared to others, as one court recently explained, but rather that plaintiffs bear the burden of alleging sufficient facts supporting the comparisons they use. *Wehner*, 2021 WL 2417098, at *9. That is what Plaintiffs here fail to do.

Plaintiffs defend their use of inapt comparators by arguing that the First Circuit approves of comparing active and passive funds, but that misconstrues the case law. Opp. at 19 (citing *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 34 (1st Cir. 2018)). *Brotherston* simply held that once a plaintiff has proven that an active fund was "selected by the use of imprudent means," it

---

target-date funds. 898 F.3d at 823 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the Wells Fargo TDFs were an imprudent choice at the outset."). Nor did *Meiners* find "that a 'market index' is a meaningful benchmark," contrary to Plaintiffs' mischaracterization. Opp. at 19. *Meiners* distinguished complaints that lacked "factual allegations are facts about the funds themselves, which ERISA plaintiffs can research," and therefore warrant dismissal, from complaints without "factual allegations [regarding] the fiduciary's internal processes, which ERISA plaintiffs generally lack." 898 F.3d at 822-23. The Amended Complaint here falls into the former category, mandating dismissal.

[8] Plaintiffs point to *Brown-Davis v. Walgreen Co.*, 2020 WL 8921399 (N.D. Ill. Mar. 16, 2020), wherein the court declined to dismiss a lawsuit challenging the Focus Funds. Opp. at 14. The *Brown-Davis* court failed to consider the differing features and characteristics of the Focus Funds and the plaintiffs' comparators and did not apply the "meaningful benchmark" requirement, which Defendants respectfully contend was wrong. *Brown-Davis* was issued before the Seventh Circuit's decision affirming dismissal of performance-based claims (among other claims) in *Divane v. Nw. Univ.*, 953 F.3d 980 (7th Cir. 2020), *cert. granted sub nom. Hughes v. Nw. Univ.*, 2021 WL 2742780 (U.S. July 2, 2021).

is "reasonable" to prove the <u>loss</u> resulting from that breach by comparing the fund's return to a benchmark fund or index. 907 F.3d at 34. But that is not what Plaintiffs seek to do here. They point to the <u>passive</u> Focus Funds' performance relative to <u>active</u> target-date funds as a means to show that the Focus Funds were imprudent in the first place. *Brotherston* is of no help to Plaintiffs here.

And while Plaintiffs take issue with Defendants' point that collective trusts and mutual funds are inapt comparators, Opp. at 19, they do not address the case law—including a decision issued by this Court—rejecting such comparisons. *See* Defs.' Mem. at 9. Nor do they identify <u>any</u> decision holding that a performance comparison pitting collective trusts against mutual funds plausibly infers imprudence.

Further, Plaintiffs mischaracterize Defendants' argument about the Focus Funds' published benchmarks. Opp. at 19. Defendants are not asking the Court to validate the funds' performance, but raise the published benchmarks to highlight the Amended Complaint's failure to recognize the different investment allocations and objectives of the Focus Funds in favor of Plaintiffs' self-serving selection of inapt comparators. And although Plaintiffs argue that the Department of Labor mandates the use of a "broad-based securities market index," Opp. at 19-20, they conflate two distinct concepts. The regulation Plaintiffs cite governs plan disclosures but says nothing about what benchmark a plan fiduciary may use to evaluate a fund's performance, much less prohibit using a custom benchmark for this purpose. *See* 75 Fed. Reg. 64,910, 64,916-64,917 (Oct. 20, 2010); *see also* 29 C.F.R. § 2550.404a-5.[9] Moreover, the Plan disclosures <u>did</u> use a broad-based index for the Focus Funds, but it was not the S&P target-date

---

[9] Courts have recognized that analyzing an investment's performance compared to a custom benchmark is perfectly permissible. *See Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 315-16, & n.116 (S.D.N.Y. 2018) (holding that the CREF Stock Account was substantively prudent because it "closely tracked the performance" of its custom benchmark). The Northern Trust custom benchmark is no different.

index that Plaintiffs prefer.  *See* ECF No. 27-2 at Pages 7-8 of 14; ECF No. 27-3 at Pages 7-8 of 14; ECF No. 27-4 at Pages 7-8 of 12; ECF No. 27-5 at Pages 7-8 of 14.  This further undercuts Plaintiffs' implausible theory that the S&P index is an appropriate benchmark for the Focus Funds.

### 3.    Plaintiffs' Additional Allegations About The Focus Funds Fail To Plausibly Suggest Imprudence

Plaintiffs further contend they have alleged several "red flags" that plausibly suggest fiduciary misconduct, including that the Focus Funds had a short performance history and were "untested."  Opp. at 8, 13-14.  Plaintiffs cite no case law showing that any court agrees with them while ignoring the authority cited by Defendants holding just the opposite—alleging that a fund "was untested is . . . insufficient to establish imprudence."  Defs.' Mem. at 15 (citing *Patterson*, 2019 WL 4934834, at *14).  And they fail to respond to Defendants' points that the target-date funds they prefer suffer from the same purported flaws.  Defs.' Mem. at 15-16.

*Wehner* is instructive.  There, the court dismissed an analogous claim challenging custom target-date funds.  2021 WL 2417098, at *8.  Like Plaintiffs here, to bolster allegations of poor performance, the *Wehner* plaintiff pointed to "red flags" such as the defendants' decision to retain Russell, the target-date funds' investment manager, which "had just four custom TDF clients, one of which terminated its relationship with Russell in early 2016, meaning that 'just two other plans entrusted the design of their glide path to Russell.'"  *Id.*  Rejecting the plaintiff's argument that these facts plausibly implied that "Russell had a poor reputation in managing TDFs," the court found it just as likely that "the number of customers is simply a reflection of the relative popularity of custom TDFs over the past few years."  *Id.*  Consequently, the "red flags" did not plausibly suggest that the defendants acted imprudently in selecting and retaining the target-date funds.  *Id.*  The same is true here.

13

D.      **Plaintiffs' Share Class Allegations Do Not State A Claim**

In their Opposition, Plaintiffs wholly disregard the ample authority holding that merely alleging that a plan offered higher-cost share classes fails to infer imprudence. *See* Opp. at 14-15; Defs.' Mem. at 18.[10]  Even more egregious, they ignore judicially-noticeable documents showing that the range of fees charged by the Plan's investment options is lower than ranges courts have held reasonable as a matter of law. *Id*.  They offer no response to that argument.

And they close their eyes to facts properly before the Court showing that the Plan's share classes changed over time and investment management fees decreased. *Id*. at 18-19.  In other words, Plaintiffs urge the Court to look at the Amended Complaint in a vacuum, despite contradictory information showing that their share class claim is implausible. *See Ashcroft*, 556 U.S. at 681 (concluding that plaintiff failed to state a claim in light of "more likely explanations" for defendants' conduct); *White*, 752 F. App'x at 454 ("[P]laintiff . . . cannot offer allegations that are 'merely consistent with' [its] favored explanation but are also consistent with [an] alternative explanation.").  The Court should refuse to ignore documents contradicting their conclusory allegations. *See Davis v. Salesforce.com, Inc.,* 2020 WL 5893405, at *6 n.13 (N.D. Cal. Oct. 5, 2020) (dismissing share class claim and noting that exhibit supporting motion to dismiss reflected changes to share classes, which contradicted the plaintiffs' assertion).

Rather than face these arguments and documents, Plaintiffs prognosticate about the Supreme Court's forthcoming decision in *Divane*, one of the many cases Defendants relied on in asserting that Count II should be dismissed.  *See* Opp. at 15.  Plaintiffs try to read the tea leaves

---

[10] *See also Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011) (dismissing claim based on allegations that defendants offered "retail" mutual funds instead of the "institutional" class of the same funds, and noting that a "principal issue[]"); *Hecker*, 556 F.3d at 586 (affirming dismissal of claim that plan must offer cheaper institutional shares of mutual funds and holding that "nothing in [ERISA] requires plan fiduciaries to include any particular mix of investment vehicles in their plan").

based on the government's argument in urging the Supreme Court to grant certiorari, arguing it foreshadows *Divane'*s demise.  But it is far from certain that the Supreme Court will agree with the government's position.  *See United States v. Ramirez*, 471 F. Supp. 3d 354, 367 (D. Mass. 2020) ("It is well settled that '[t]he grant of certiorari on an issue does not suggest a view on the merits.'").  Until overturned, *Divane* remains good law.  *See United States v. Scott*, 2014 WL 5816948, at *2 (D. Mass. Nov. 10, 2014).

>        **E.**    **Count III Cannot Stand**

In their Opposition, Plaintiffs shrug off their obligation to sufficiently plead the claim that Takeda failed to monitor Plan fiduciaries.  Opp. at 20.  Their only response is that the "derivative monitoring claim" goes the way of their underlying fiduciary breach claims.  *Id*.  But it is an independent claim and cannot rest on conclusory allegations.  Because the Amended Complaint alleges no <u>facts</u> regarding what process of monitoring other fiduciaries existed or how it was deficient, Count III should be dismissed.  *See, e.g.*, *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 2016 WL 7494320, at *16 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F. App'x 3 (2d Cir. 2017); *Fisher v. JP Morgan Chase & Co*., 703 F. Supp. 2d 374, 389 (S.D.N.Y. 2010), *aff'd*, 469 F. App'x 57 (2d Cir. 2012).

**III.    CONCLUSION**

For the above reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated: July 9, 2021

Respectfully submitted,

*/s/ Sari M. Alamuddin*
MORGAN, LEWIS & BOCKIUS LLP

Sari M. Alamuddin (*pro hac vice*)
77 West Wacker Drive, Fifth Floor
Chicago, IL  60601-5094
Phone: (312) 324-1000
Email: sari.alamuddin@morganlewis.com

Melissa D. Hill (*pro hac vice*)
101 Park Avenue
New York, NY  10178-0060
Phone: (212) 309-6000
Email: melissa.hill@morganlewis.com

Abbey M. Glenn (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
Phone: (202) 739-3000
Email: abbey.glenn@morganlewis.com

Keri L. Engelman
One Federal Street
Boston, MA  02110-1726
Phone: (617) 341-7700
Email: keri.engelman@morganlewis.com

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 9, 2021, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF filing system.

_/s/ Sari M. Alamuddin_
Sari M. Alamuddin