UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT FORD, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>TAKEDA PHARMACEUTICALS U.S.A., INC., *et al.*,<br><br>                    Defendants. | Civil Action No. 1:21-cv-10090-WGY |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | RELEVANT FACTUAL BACKGROUND | 2 |
| | A. | The Plan And Its Investment Options | 2 |
| | B. | The Proposed Class Representatives And Proposed Class | 4 |
| III. | | ARGUMENT | 4 |
| | A. | Plaintiffs Lack Article III Standing To Pursue Claims As To Investments In Which They Did Not Personally Invest And Therefore They Cannot Represent Putative Class Members Regarding Those Claims | 4 |
| | B. | Plaintiffs Fail To Establish Commonality Or Typicality Under Rule 23 Because They Have Not Shown That All Putative Class Members Were Injured By The Fiduciary Breaches They Claim Occurred | 8 |
| IV. | | CONCLUSION | 13 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Avritt v. Reliastar Life Ins. Co.*,
  615 F.3d 1023 (8th Cir. 2010) ...................................................................................................11

*Bendaoud v. Hodgson*,
  578 F. Supp. 2d 257 (D. Mass. 2008) .....................................................................................6, 7

*Berry v. Wells Fargo & Co.*,
  No. 17-304, 2017 WL 7411165 (D.S.C. July 31, 2017) ...........................................................12

*Cassell v. Vanderbilt Univ.*,
  No. 16-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) .................................................12

*Clark v. Duke Univ.*,
  No. 16-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ...................................................12

*David v. Alphin*,
  704 F.3d 327 (4th Cir. 2013) ......................................................................................................6

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008) ....................................................................................................................5

*Defazio v. Hollister Emp. Share Ownership Tr.*,
  612 F. App'x 439 (9th Cir. 2015) ...............................................................................................7

*Dezelan v. Voya Ret. Ins. & Annuity Co.*,
  No. 16-1251, 2017 WL 2909714 (D. Conn. July 6, 2017) .........................................................6

*Fallick v. Nationwide Mutual Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ....................................................................................................12

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
  285 F.R.D. 169 (D. Mass. 2012) ...............................................................................................12

*Halvorson v. Auto-Owners Ins. Co.*,
  718 F.3d 773 (8th Cir. 2013) ....................................................................................................11

*Henderson v. Emory Univ.*,
  No. 16-2920, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) ....................................................12

*Hochstadt v. Bos. Sci. Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ...........................................................................................9

*Johnson v. Delta Air Lines, Inc.*,
   No. 17-2608, 2017 WL 10378320 (N.D. Ga. Dec. 12, 2017).................................................6

*Krueger v. Ameriprise Fin., Inc.*,
   304 F.R.D. 559 (D. Minn. 2014).......................................................................................12

*Lange v. Infinity Healthcare Physicians, S.C.*,
   No. 20-737, 2021 WL 3022117 (W.D. Wis. July 16, 2021)..................................................6

*In Re LinkedIn ERISA Litig.*,
   No. 20-05704, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ...............................................6

*Munro v. Univ. of S. Cal.*,
   No. 16-6191, 2019 WL 7842551 (C.D. Cal. Dec. 20, 2019)................................................12

*In re Omnicom ERISA Litig.*,
   No. 20-4141, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021)....................................................6

*Patterson v. Morgan Stanley*,
   No. 16-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019).....................................................6

*Perkins v. United Surgical Partners Int'l Inc.*,
   No. 21-00973, 2022 WL 824839 (N.D. Tex. Mar. 18, 2022).................................................6

*Pimentel v. City of Methuen*,
   No. 17-11921, 2019 WL 6699667 (D. Mass. Dec. 9, 2019)................................................11

*In re Principal U.S. Prop. Acct. ERISA Litig.*,
   No. 10-00198, 2013 WL 7218827 (S.D. Iowa Sept. 30, 2013) .............................................9

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
   No. 14-09764, 2018 WL 739580 (S.D.N.Y. 2018)..............................................................11

*Sacerdote v. New York Univ.*,
   No. 16- 6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018).................................................12

*Silva v. Evonik Corp.*,
   No. 20-2202, 2020 WL 12574912 (D.N.J. Dec. 30, 2020)....................................................7

*Spano v. The Boeing Co.*,
   633 F.3d 574 ..............................................................................................................9, 11, 12

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)................................................................................................................5

*Tracey v. MIT*,
   No. 16-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018) ................................................9

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ........................................................................................................8

*In re UBS ERISA Litig.*,
    No. 08-6696, 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom.*,
    *Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015) ..................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................................8, 9, 10

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................................4, 5

*Wilcox v. Georgetown Univ.*,
    No. 18-422, 2019 WL 132281 (D.D.C. Jan. 8, 2019) ..................................................6

*Yost v. First Horizon Nat'l Corp.*,
    No. 08-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011) ......................................6

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................6, 7, 8, 9

I.  **INTRODUCTION**

Plaintiffs are two former participants in the Takeda Pharmaceuticals U.S.A., Inc. Savings and Retirement Plan ("Plan") who claim Defendants breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA") by including in the Plan nineteen purportedly "expensive" and poor-performing investment options.  Plaintiffs do not contend that *every one* of the 38 discrete investment options offered under the Plan during the putative class period (since January 19, 2015) was imprudent.[1]  Yet they seek to represent an expansive class that indiscriminately includes anyone who participated in the Plan since January 19, 2015, regardless of which investment option(s) the absent class member selected or whether the absent class member was injured by Defendants' purported breaches.  The Court should refuse to certify this overly broad class.

First, the class should be limited to participants who invested in the same funds as the named Plaintiffs.  That is because the named Plaintiffs lack Article III standing to pursue claims as to investment options in which they did not personally invest and as to which they suffered no injury in fact.  Here, the named Plaintiffs collectively invested in only three of the nineteen challenged investment options.  Having never invested in the other sixteen options, Plaintiffs could not have been harmed by their performance or fees, and thus have nothing to gain (or lose) from the success (or failure) of their challenge.  These named Plaintiffs therefore cannot represent putative class members who invested in those sixteen funds, and such claims cannot be certified.

---

[1] *See, e.g.*, Mem. in Support of Pls.' Motion for Class Certification, Dkt. 79 ("Mem."), at 4 ("the funds at issue were part of the investment lineup that Defendants provided.").

1

Second, the class should exclude participants who have not been injured by Defendants' purported breaches. Whether any particular class member was harmed by investment underperformance or excessive investment management fees is based entirely on the individual investment decisions made by each of the over 8,000 members in the proposed class. Plaintiffs have not provided any evidence showing that every single putative class member suffered from these injuries, despite their burden to do so. In fact, the omnibus putative class—covering *all* Plan participants—necessarily contains individuals who never invested in the allegedly imprudent funds and thus were not harmed according to Plaintiffs' theories. The incongruence between the named Plaintiffs' investments and that of absent class members defeats commonality and typicality. The class should be narrowed to comport with the proposed class representatives.[2]

## II.  RELEVANT FACTUAL BACKGROUND

### A.  The Plan And Its Investment Options

The Plan is a defined contribution plan providing tax-advantaged savings for retirement to eligible employees of Takeda Pharmaceuticals, U.S.A., Inc. Once enrolled, each participant decides how to allocate his or her account balance among the various investment options offered under the Plan, which offers a mix of funds with a range of expense ratios and risk/reward profiles. *See* Dkts. 27-2, 27-3, 27-4, 27-5, 27-12. Each Plan participant is free to construct his or her own portfolio from among all of the investment options available in the Plan.

From 2015 to 2019, the Plan offered an investment menu comprised of all passively-managed index funds. *See* Dkts. 27-2, 27-3, 27-4, 27-5. During this time, the fees, or expense

---

[2] Indeed, Defendants offered to stipulate to certification of a class that is appropriately tailored, but Plaintiffs refused.

ratios, for the challenged investment options ranged from 0.01% to 0.31%, meaning that participants paid 20 cents to $3.10 for every $1,000 invested in the funds. *See* Dkts. 27-2, 27-3, 27-4, 27-5. These fees varied from year to year because Defendants adjusted the share classes of the Plan's investment options, leading to continual fee reductions over time. *See* Dkts. 27-2, 27-3, 27-4, 27-5, 27-11. Although the investment fees were already low in 2015, expense ratios steadily *decreased* over time. As of December 31, 2018, for example, all but two of the Plan's investment options cost less than 0.073% (73 cents per $1,000 invested). Dkt. 27-5.

The Plan offered 38 discrete investment options during the putative class period. Yet through this lawsuit, Plaintiffs challenge only nineteen of those funds. Their main target is the Northern Trust Focus Funds, a suite of twelve target-date funds, which they claim performed poorly and were offered in more expensive share classes. Second Amended Compl., Dkt. 53 ("SAC"), ¶¶ 4, 56-88. As target-date funds, the Focus Funds "are designed to offer a convenient way to invest for a person expecting to retire around a particular date" and pursue "a long-term investment strategy, using a mix of asset classes (or asset allocation) that the fund provider adjusts to become more conservative over time."[3] Throughout the putative class period, the Focus Funds' fees were less than 0.07%, and decreased to 0.05% in 2017. *See* Dkts. 27-2, 27-3, 27-4, 27-5.

Despite the Plan's low investment fees, Plaintiffs also take aim at seven additional Plan investment options they contend were too expensive: Northern Trust Aggregate Bond Index Fund; Northern Trust S&P 400 Index Fund; Northern Trust S&P 500 Index Fund; Northern Trust Russell 2000 Index Fund; Northern Trust ACWI Ex-US Index Fund; Invesco Stable Value Fund;

---

[3] *See Frequently Asked Questions about Target Date or Lifecycle Funds*, INSTITUTIONAL INVESTOR (Aug. 24, 2016), https://www.institutionalinvestor.com/article/b14z9nkzwwdbcv/frequently-asked-questions-abouttarget-date-or-lifecycle-funds.

and Vanguard Prime Money Market Fund.  SAC ¶¶ 99-102.

Since January 19, 2015, the Plan has offered nineteen other investment options that are *not* at issue in this litigation or challenged by Plaintiffs:  (1) Atlanta Capital High Quality SMID Cap Core Separate Account; (2) Columbia Contrarian Large Cap Core Separate Account; (3) MFS International Equity CIT; (4) Northern Trust Extended Equity Market Index Fund; (5) Prudential Core Plus Bond fund; and (6) a suite of fourteen Fidelity target-date funds.  *See* Dkts. 27-2, 27-3, 27-4, 27-5, 27-12.

### B.   The Proposed Class Representatives And Proposed Class

Plaintiffs seek to certify two *former* Plan participants as class representatives:  Robert Ford and Phillip Schwartz.  Mem. at 1-2; Declaration of Abbey Glenn, Ex. A at 190:5-9; Ex. B at 41:25-42:13, 59:22-24.  During the proposed class period, Ford invested in the Northern Trust Focus 2015 fund and the Northern Trust S&P 500 Index fund, while Schwartz invested in the Northern Trust Focus 2040 fund.  Ex. A at 96:4-8; Ex. B at 81:4-6, 111:17-19, 124:21-125:2.  Dkt. 82 ¶ 1; Dkt. 83 ¶ 1.  In other words, combined, the two proposed class representatives invested in only three of the nineteen investment options that Plaintiffs claim were imprudent.  There is no evidence that Ford or Schwartz invested in any of the remaining sixteen challenged investment options.  *See generally* Dkts. 82-83.  Despite this, Plaintiffs seek to certify a class of *all* participants in the Plan since January 19, 2015, regardless of the particular investments selected by the absent class members.  Mem. at 8.

### III.   ARGUMENT

### A.   Plaintiffs Lack Article III Standing To Pursue Claims As To Investments In Which They Did Not Personally Invest And Therefore They Cannot Represent Putative Class Members Regarding Those Claims

Article III standing is "the threshold question in every federal case."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  To establish constitutional standing, Plaintiffs bear the burden of

4

demonstrating "(1) [they] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The injury-in-fact element requires showing that the plaintiff "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotation and citation omitted).  Standing must be established for "each claim" and "for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quotation and citation omitted).

While Plaintiffs' brief solely focuses on Defendants' alleged conduct, which they contend suffices to support certification, they ignore the fundamental tenet of standing.  In a class action, a court must first determine if the named plaintiff has standing based on the allegations of personal injury made in the complaint.  That is, Plaintiffs must "show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502.

Here, Plaintiffs have not proven that they have constitutional standing to assert *all* of the claims in the Second Amended Complaint.  Plaintiffs contend that nineteen Plan investment options were too expensive and/or underperformed.  SAC ¶¶ 61, 101-03.  Yet combined, the two named Plaintiffs invested in only three of those funds.  Ex. A at 96:4-8; Ex. B at 81:4-6, 111:17-19, 124:21-125:2.  As to the sixteen remaining challenged funds in which the named Plaintiffs never invested, they have not suffered any injury in fact—they did not suffer from the purportedly poor investment performance or pay the high fees charged by those funds.

Courts have held that ERISA plaintiffs do not have standing to challenge the offering of

5

specific funds in which they did not personally invest.[4] *Yost v. First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011), is instructive. The plaintiffs there sought class certification in a lawsuit challenging the offering of First Horizon stock and the First Funds in a retirement plan. *Id*. at *1. The court concluded that the plaintiffs had standing to represent a class of participants whose retirement plan accounts held First Horizon stock because the named plaintiffs themselves invested in that stock. *Id.* at *6. But the named plaintiff who never personally invested in the First Funds did not have standing to represent class members who did. *Id.* (recognizing it was "axiomatic" the plaintiff who "never had any holdings in the First Funds . . . did not suffer . . . [an] injury-in-fact and [lacked] standing to sue for any breach of fiduciary duty as to the selection or retention of First Funds as an investment option in the Plan."); *accord Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 266 (D. Mass. 2008) (observing that a plaintiff cannot "seek recovery on behalf of another plan participant's financial loss" as "[h]e was not harmed by that participant's loss, and any recovery to offset that loss will not benefit him in the least.").

At most, assuming they can satisfy the Rule 23 requirements, the only class Plaintiffs can represent is one consisting of participants who invested in the very same funds that Ford and

---

[4] *See David v. Alphin*, 704 F.3d 327, 331-38 (4th Cir. 2013) (deciding at summary judgment stage that the plaintiffs lacked standing for ERISA challenge to proprietary mutual funds with "poor performance and high fees" where plaintiffs' personal benefits were not affected); *In Re LinkedIn ERISA Litig.,* No. 20-05704, 2021 WL 5331448, at *4-5 (N.D. Cal. Nov. 16, 2021) (dismissing claims as to investments in which the named plaintiffs did not personally invest pursuant to Rule 12(b)(1)); *Perkins v. United Surgical Partners Int'l Inc.*, No. 21-00973, 2022 WL 824839, at *4 (N.D. Tex. Mar. 18, 2022) (same); *Lange v. Infinity Healthcare Physicians*, S.C., No. 20-737, 2021 WL 3022117, at *2-4 (W.D. Wis. July 16, 2021) (same); *In re Omnicom ERISA Litig.*, No. 20-4141, 2021 WL 3292487, at *10 (S.D.N.Y. Aug. 2, 2021) (same); *Patterson v. Morgan Stanley*, No. 16-6568, 2019 WL 4934834, at *4-7 (S.D.N.Y. Oct. 7, 2019) (same); *Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, at *10 (D.D.C. Jan. 8, 2019) (same); *Johnson v. Delta Air Lines, Inc.*, No. 17-2608, 2017 WL 10378320, at *2 (N.D. Ga. Dec. 12, 2017) (same); *Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 16-1251, 2017 WL 2909714, at *6-7 (D. Conn. July 6, 2017) (same).

Schwartz invested in—the Northern Trust Focus 2015 and 2040 funds and the Northern Trust S&P 500 Index fund. If the Court determines that class treatment is appropriate, then the putative class should be narrowed accordingly.[5]

Plaintiffs anticipate this argument, contending that this inquiry is not properly construed as an Article III standing issue but rather one of class certification. Mem. at 14 n.8. But even applying a Rule 23 lens, Plaintiffs fall short, as discussed *infra* Section III(B). Whether viewed as a standing or certification issue, the dissimilarity of injuries suffered by the named Plaintiffs and putative class members is problematic.

Plaintiffs lack Article III standing in another respect. Through this lawsuit, they seek prospective relief to "reform the Plan to include only prudent investments[,]" SAC Prayer for Relief, and "prevent future breaches." Mem. at 10. However, prospective relief is not available because neither Ford nor Schwartz currently participates in the Plan. Ex. A at 190:5-9; Ex. B at 41:25-42:13, 59:22-24. Courts regularly hold that former plan participants lack standing to obtain prospective relief because they cannot demonstrate a likelihood of future injury in connection with the plan. *See, e.g., Defazio v. Hollister Emp. Share Ownership Tr.*, 612 F. App'x 439, 441 (9th Cir. 2015); *Silva v. Evonik Corp.*, No. 20-2202, 2020 WL 12574912, at *2 (D.N.J. Dec. 30, 2020); *In re UBS ERISA Litig.*, No. 08-6696, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom., Taveras v. UBS AG*, 612 F. App'x 27, *29 (2d Cir. 2015); *Bendaoud*, 578 F. Supp. 2d at 267-68. The Court should thus refuse to certify Plaintiffs' claims for prospective relief on a classwide basis.

---

[5] Plaintiffs may respond that it is inappropriate to narrow the class to specific vintages of the Focus Funds (*ie*, fund years 2015 or 2040) because the Focus Funds are offered as an entire suite composed of all available vintages. But even if the Court agrees and concludes that the named Plaintiffs have standing to challenge the entire Focus Fund suite because they each invested in one vintage, that logic does not extend to the other challenged funds, none of which is part of the Focus Fund suite.

### B. Plaintiffs Fail To Establish Commonality Or Typicality Under Rule 23 Because They Have Not Shown That All Putative Class Members Were Injured By The Fiduciary Breaches They Claim Occurred

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quotation and citation omitted). Accordingly, courts must undertake a "rigorous analysis" of each Rule 23 prerequisite before certifying a class. *Id*. at 351. A court with doubts about whether "the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment.

Disputed here is whether Plaintiffs meet the commonality and typicality requirements of Rule 23(a). Plaintiffs bear the burden of proving "there are questions of law or fact common to the class" and "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(2)-(3). Rule 23 is not merely a pleading standard. *Dukes*, 564 U.S. at 350. Rather, Plaintiffs must "affirmatively demonstrate" compliance with Rule 23(a)—that is, they must "prove that there are *in fact* . . . common questions of law or fact, etc." *Id* (emphasis in original).

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (quotation and citation omitted).[6] Because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not," *each class member* must have standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Here, Plaintiffs have not proven that all putative class members were harmed by

---

[6] Commonality "does not mean merely that [class members] have all suffered a violation of the same provision of law." *Id*. at 350. Rather, to satisfy commonality, all class members' claims must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

the purported fiduciary breaches about which they complain, and thus they fail to establish commonality.

Plaintiffs allege that Defendants breached their fiduciary duties by selecting and retaining nineteen poor performing and/or expensive investment options in the Plan. Mem. at 3; SAC ¶¶ 37-88, 119-24. But Plaintiffs have not demonstrated that all members of the proposed class—which encompasses every participant in the Plan since January 19, 2015—invested in one of the funds they contend performed poorly or cost too much.[7] Nor have Plaintiffs limited their proposed class to only include Plan participants who invested in the challenged funds. In other words, the harm allegedly suffered by the named Plaintiffs—poor investment performance or excessive investment fees—is not a universal injury shared by every member of the putative class. This defeats commonality and typicality. *See Dukes*, 564 U.S. at 349-50; *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (incongruence between the "investments held by the named plaintiff and those held by members of the class he or she wishes to represent" violated Rule 23(a)(3)'s typicality requirement); *In re Principal U.S. Prop. Acct. ERISA Litig.*, No. 10-00198, 2013 WL 7218827, at *27 (S.D. Iowa Sept. 30, 2013) (finding no commonality for "thousands of putative class members … all of which had different investment options" and made "[i]ndividualized investment decisions.").[8]

---

[7] Rather than proffering such evidence, Plaintiffs devote pages of their brief rehashing unsupported allegations from their complaint. Mem. at 4-7. Not only is this discussion untethered to the Rule 23 requirements, but it relates to the merits of their claims, despite Plaintiffs' acknowledgement that such merits-based inquiries are inappropriate at this juncture. Mem. at 8.

[8] While Plaintiffs rely on two decisions from this Court which they contend support a finding of commonality, Mem. at 1, 14, those decisions did not address whether commonality existed when the class representatives invested in different funds than absent class members. *See Tracey v. MIT*, No. 16-11620, 2018 WL 5114167 (D. Mass. Oct. 19, 2018); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95 (D. Mass. 2010). Indeed, *Hochstadt* recognized that class certification had been denied earlier in the matter when certain proposed class representatives failed to demonstrate individual injury and therefore lacked Article III standing. 708 F. Supp. 2d at 101.

Each Plan participant decides how to allocate his or her account among the Plan's 38 discrete investment options, nineteen of which are challenged by Plaintiffs. But, like Plaintiffs themselves, it is unlikely that many Plan participants actually invested in each of those challenged options and therefore could possibly have "suffered the same injury" that, on Plaintiffs' telling, was suffered by those who did invest in that option. *Dukes*, 564 U.S. at 350. Indeed, the proposed class presumably includes participants who never invested in *any* of the challenged funds and thus suffered no injury from the alleged imprudence.

Plainly, the named Plaintiffs' claims are not "typical" of those absent class members' claims—such class members have no claims at all. Worse still, Plaintiffs (who bear the burden of proving that certification is appropriate) do not provide even the rough dates for their investments in the challenged options that would be necessary for the Court to assess what class members would have similar claims.

Instead of establishing that all members of the proposed class suffered the same injury they did, Plaintiffs assert in conclusory fashion that all participants had access to "the same menu of investment options" and "were harmed . . . either by investing in imprudent funds, or by being denied the opportunity to invest in prudent alternatives." Mem. at 13. This ignores that putative class members made different investment decisions that resulted in different investment performance and different investment fees than the named Plaintiffs. Indeed, the Supreme Court recognized that "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. That precludes a showing of commonality for a sweeping class encompassing all Plan participants and beneficiaries.

By way of example, Plaintiffs' suit does not challenge nineteen of the investment options offered in the Plan. *See supra* Section II(A). Undoubtedly, some Plan participants invested only

10

in one (or more) of these funds. These participants have not been harmed according to Plaintiffs' theories and do not have standing to assert a claim against Defendants. Consequently, Plaintiffs should not be permitted to represent a class of these participants. *See Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) (affirming denial of certification of class containing absent class members who were not injured); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (same); *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, No. 14-09764, 2018 WL 739580, *12 (S.D.N.Y. 2018) ("A 'class must … be defined in such a way that anyone within it would have standing.'") (citation omitted); *accord Pimentel v. City of Methuen,* No. 17-11921, 2019 WL 6699667, at *5 (D. Mass. Dec. 9, 2019) (denying certification based on alleged misleading form in part because "it is highly unlikely that all class members relied upon the form in the same way, or that they all took the same course of action" which "in turn, affects whether all class members suffered the same type of injury, or indeed any injury at all.").

In *Spano*, the Seventh Circuit rejected certification of an ERISA class very similar to the one proposed here, which that court described as "breathtaking in its scope." 633 F.3d at 586. The fatal flaw in Plaintiffs' proposed class, as the Seventh Circuit explained, was that the plaintiffs sought to represent a class challenging the inclusion of certain investment options, even though "many participants in the past (and who knows about the future) never held a single share in either or both of those funds." *Id*. Rather, "there must be a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent." *Id*. The Seventh Circuit held that "a class representative in a defined-contribution case would at a minimum need to have invested in the same funds as the class members." *Id.*. Here, because Plaintiffs seek to represent a class that includes class members who never invested in the options that Plaintiffs challenge, they cannot establish typicality.

11

Plaintiffs contend that "variation in individual participants' investment choices" does not defeat typicality, Mem. at 13-14, citing *Boley v. Universal Health Services*, 36 F. 4th 124 (3d Cir. 2022). But that decision does not bind this Court and, Defendants submit, was wrongly decided. The Court should follow *Spano* instead.[9] Finally, Plaintiffs further rely on cases involving claims challenging plan recordkeeping fees. Mem. at 12; *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 564 (D. Minn. 2014); *Munro v. Univ. of S. Cal.*, No. 16-6191, 2019 WL 7842551, at *2 (C.D. Cal. Dec. 20, 2019); *Cassell v. Vanderbilt Univ.*, No. 16-2086, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018); *Henderson v. Emory Univ.*, No. 16-2920, 2018 WL 6332343, at *8 (N.D. Ga. Sept. 13, 2018); *Clark v. Duke Univ.*, No. 16-1044, 2018 WL 1801946, at *1 (M.D.N.C. Apr. 13, 2018); *Sacerdote v. New York Univ.*, No. 16- 6284, 2018 WL 840364, at *2 (S.D.N.Y. Feb. 13, 2018). That is a crucial distinction. Recordkeeping fee claims do not challenge "specific funds" but are based on allegations that unreasonable recordkeeping fees injured *all* of the participants in a plan. *Cassell*, 2018 WL 5264640, at *3 (recognizing further that recordkeeping fee claims are based on "allegations of an imprudent process that allegedly injured all Plan participants, including Plaintiffs, when a portion of those fees were charged to individual accounts."). Plaintiffs here do not assert a recordkeeping fee claim—their lawsuit is focused on specific investment-based challenges that purportedly harmed only participants who were invested in those particular funds. The Court should therefore disregard the inapposite cases cited by Plaintiffs.

---

[9] Plaintiffs also point to *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 285 F.R.D. 169, 174 (D. Mass. 2012), which in turn relied on *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). *Fallick* addressed whether an individual had standing to represent participants in other benefit plans, which is not the circumstance here. Moreover, *Fallick*'s viability is in doubt, as at least one court has noted it may run afoul of more recent Supreme Court jurisprudence on constitutional standing. *See Berry v. Wells Fargo & Co.*, No. 17-304, 2017 WL 7411165, at *6 (D.S.C. July 31, 2017).

## IV.     CONCLUSION

For the above reasons, the Court should deny certification of the class as proposed by Plaintiffs.  At the very least, the class should include only Plan participants who invested in the same three investment options as the named Plaintiffs, and exclude all Plan participants who invested in Plan investment options that are not subject to challenge in the instant suit and therefore have not been harmed by the alleged breaches.

Dated: August 19, 2022                                  Respectfully submitted,

/s/ Sari M. Alamuddin
MORGAN, LEWIS & BOCKIUS LLP

Sari M. Alamuddin (*pro hac vice*)
77 West Wacker Drive, Fifth Floor
Chicago, IL  60601-5094
Phone: (312) 324-1000
Email: sari.alamuddin@morganlewis.com

Melissa D. Hill (*pro hac vice*)
101 Park Avenue
New York, NY  10178-0060
Phone: (212) 309-6000
Email: melissa.hill@morganlewis.com

Abbey M. Glenn (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
Phone: (202) 739-3000
Email: abbey.glenn@morganlewis.com

Keri L. Engelman
One Federal Street
Boston, MA  02110-1726
Phone: (617) 341-7700
Email: keri.engelman@morganlewis.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2022, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF filing system.

*/s/ Sari M. Alamuddin*
Sari M. Alamuddin
